UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| DONALD CLARK, SR. and<br>TERRI CLARK,<br><br>   Plaintiffs<br><br>  v.<br><br>THE INHABITANTS OF THE<br>TOWN OF PALERMO, et al.,<br><br>   Defendants | )<br>)<br>)<br>)<br>)<br>)  07-CV-134-B-W<br>)<br>)<br>)<br>)<br>) |

**RECOMMENDED DECISION ON MOTIONS TO DISMISS**

Donald and Terri Clark commenced this action in state court against the Town of Palermo and its attorney, Matthew Evans, for allegedly orchestrating the disposal of the Clark family's personal property in conjunction with certain nuisance abatement efforts. The Town of Palermo and Attorney Evans have filed motions to dismiss the sole federal claim in the case (a § 1983 due process claim) and Attorney Evans has also requested the dismissal of an emotional distress claim. The motions are now before me on referral from the Court. For the reasons that follow, I recommend that the Court grant both motions as to the § 1983 due process claim and remand this case to the state court.

**Factual Allegations**

The gist of the Clarks' complaint is easily stated. They were the losers in a state court proceeding addressed to the Town of Palermo's desire to demolish their residence because it was unfit for human habitation and presented a serious threat to the public's health, safety and welfare. The judgment that concluded that litigation authorized the Town to "remove" the Clarks' house, shed, vehicles, trash and all debris on the premises,

but not the Clarks' garage. According to the Clarks, in the course of removing the identified structures and vehicles, the Town's agents unnecessarily and without authorization disposed of significant personal effects stored in the garage and elsewhere and (possibly) diverted the vehicles to someone's profit, without ever compensating the Clarks for the same. The Clarks also complain that the Superior Court exceeded its authority under the relevant statute and that there were certain deficiencies in the pleadings that initiated that action.[1] Additionally, the Clarks allege that, weeks after the fact, the defendants took steps to prevent the plaintiffs from entering onto their property. Based on these allegations they contend that the defendants are liable in damages for due process violations, for the state law tort of intentional infliction of emotional distress and for the market value of wrongfully removed structures under the very act that addresses removal of dangerous buildings. They also seek compensation for the value of lost

---

[1] This aspect of the claim is quite uncertain, because it is difficult to understand how a mistake by the court would justify a damages award against the defendants. The Clarks also allege in their complaint that the statute is unconstitutionally vague on its face. (Compl. ¶ 13(d).) However, the memorandum contains no discussion of this constitutional claim and presumably it was either raised and addressed in the state court or has been waived by this time. I read the current pleadings as alleging that the Town and Evans misapplied or misconstrued the statutes and the Superior Court's judgment. In their opposition to Attorney Evans's motion to dismiss the Clarks clarify the scope of the rather scattered charges in their complaint to three issues. In their own words:

> Plaintiffs' section 1983 claim has three bases. First, plaintiffs allege that Evans and the Town removed and destroyed personal property that was not within the scope of the demolition order. Second, they allege that Evans and the Town destroyed plaintiffs' vehicles without due process of law. Third, they allege that Evans and the Town unlawfully refused to allow plaintiffs back on their property after the demolition was complete.

(Pls.' Opposition Mem. at 6, Doc. No. 26.) I have reviewed the complaint in light of this later characterization. Thus, for example, although the Clarks' complaint makes passing reference to the Takings Clause when it asserts that there was a deprivation "without just compensation" (compl. ¶ 13(d)), their memorandum omits any reference to such a claim. In any event, whatever other obstacles might apply, a takings claim is premature prior to the exhaustion of state remedies. Gomez-Frau v. Acevedo Cruz, 1992 WL 83782, *1, 1992 U.S. App. LEXIS 15160, *2-*4 (1st Cir. 1992) (unpublished affirmation of dismissal under Rule 12(b)(6), including claims under both the Due Process Clause and the Takings Clause)

personal property, but have not asserted a state law claim addressed specifically to that item of damage, such as a claim of conversion. (Compl., Doc. No. 10-3.)

## Matters Outside the Pleadings

Because it begins with the state court litigation commenced by the Town in June of 2007, the Clarks' complaint tells only about half of the background story that leads to this federal case. Defendant Evans has attached to his motion to dismiss a series of documents that came into being in connection with the municipal proceedings that preceded the underlying litigation. Those documents include various notices the Town sent to the Clarks, pursuant to both 22 M.R.S.A. § 1561 and 17 M.R.S.A. § 2851, the minutes of the municipal hearing at which the town selectmen resolved to take all necessary steps to demolish all structures present on the Clarks' property, administrative warrant applications, administrative inspection warrants, municipal orders, pleadings from a Maine Rule 80B petition, and the superior court judgment that authorized the removal of various structures and other specified items of property. (Evans's Mot. to Dismiss Exs. 1-15, Doc. No. 21.) The Clarks oppose the consideration of these documents at this juncture and assert that the incorporation of all of the proposed documents would require conversion of the motion to a motion for summary judgment. That, they say, would be unfair, unless they were afforded time for discovery. (Pls.' Opposition to Def. Evans's Mot. at1-5, Doc. No. 26.) They do not articulate what discovery is needed, however. Nor do they actually challenge the authenticity of the defendants' attachments.

Ordinarily, a court considering a Rule 12(b)(6) motion may not consider any "facts" other than those alleged within the four corners of the complaint, unless the court

gives all parties a reasonable opportunity to present all materials pertinent to the motion and "converts" the motion into a motion for summary judgment subject to Rule 56. Greenier v. Colgan Air, Inc., 295 F. Supp. 2d 123, 124 (D. Me. 2003).  An exception is recognized, however, which permits a court to consider evidence beyond the allegations of the complaint so long as that evidence consists of documents that are not reasonably subject to challenge based on lack of authenticity, such as some public records and documents that are central to, incorporated into or sufficiently referred to in the complaint. Greenier v. Pace, Local No. 1188, 201 F. Supp. 2d 172, 177 (D. Me. 2002) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  Moreover, the idea of affording the non-movant with advance notice of an intention to convert a motion to dismiss into a motion for summary judgment is something of a misnomer, for when the movant attaches matters outside the pleadings and the non-movant has received those materials without controverting their accuracy and without responding to them, the Court is not really obliged to afford "express notice" of an intention to convert the motion.  Nor is it required to provide any additional time to respond beyond the time afforded in connection with the original motion.  See Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60-61 (1st Cir 2000).

  In the circumstances of this case I conclude that it would not be appropriate to base a ruling on a comprehensive review of the documents attached to Attorney Evans's motion.  Attorney Evans's counsel has simply attached the various documents to his motion, in spite of the fact that the complaint references only the Town's commencement of an action pursuant to 17 M.R.S.A. § 2859 and the court's judgment, which is attached to the complaint.  (Compl. ¶¶ 4, 6 & Ex. A, Doc. No. 9-3.)

4

Notwithstanding the foregoing, the documents certainly promise to factor into any dispositive due process analysis if this matter ever progressed to the summary judgment stage. Most fundamentally, they reflect that predeprivation notice was provided concerning nuisance abatement and that notice, a municipal hearing and a judicial hearing were all conducted concerning the removal of structures. The circumstances of these predeprivation processes appear to be beyond reasonable dispute. In turn, dispositive treatment of that claim would call for the remand of the state law claims, as there would remain no basis for this Court to exercise jurisdiction.

Ultimately, however, because the record has not been appropriately presented by the movants, I recommend that the Court review the motion to dismiss without relying upon the additional documents filed by Evans. If the court does not adopt this recommended decision, that means leaving it to a later date for the movants to request a dismissal through the vehicle of a summary judgment motion. In spite of the fact that I have curtailed my review to the abbreviated allegations and documents referenced by plaintiffs in their complaint, I still conclude that dismissal is warranted.

**Discussion**

Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion under Rule 12(b)(6), the Court is ordinarily constrained to consider the plaintiff's material factual allegations alone, without regard to extrinsic evidence. Those allegations are to be regarded as true, reasonable inferences are to be drawn in favor of the plaintiff, and a dismissal should not result so long as a plausible, non-speculative basis for liability is

apparent from a reading of the complaint.  Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007);  Roma Constr. Co. v. A Russo, 96 F.3d 566, 568-69 (1st Cir. 1996).

The pending motion to dismiss concerns only two claims: a claim under § 1983 of the Civil Rights Act, set forth in count III, and a state tort law claim for intentional infliction of emotional distress, set forth in count IV.  The § 1983 claim is addressed first.

**A.    § 1983**

Section 1983 of the Civil Rights Act confers upon every United States citizen a right to redress against any person who, acting under color of state law, causes a deprivation of his or her "rights, privileges, or immunities secured by the Constitution and laws" of the United States.  42 U.S.C. § 1983.  A section 1983 claim does not lie absent state action.  Alexis v. McDonald's Rest., 67 F.3d 341, 351 (1st Cir. 1995).  Neither the Town nor Attorney Evans takes issue with the state actor requirement in the pending motions.

The Clarks' § 1983 claim is limited to a solitary constitutional protection: the Fourteenth Amendment right to be free from a deprivation of property carried out by state government without due process of law.  U.S. Const. amend XIV.

### 1. *Predeprivation process was called for.*

> The right to prior notice and a hearing is central to the Constitution's command of due process.  "The purpose of this requirement is not only to ensure abstract fair play to the individual. Its purpose, more particularly, is to protect his use and possession of property from arbitrary encroachment -- to minimize substantively unfair or mistaken deprivations of property."

United States v. James Daniel Good Real Prop., 510 U.S. 43, 53 (1993) (quoting Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972)).  Exceptions to the general rule requiring predeprivation process exist, but are to be condoned "only in extraordinary situations

6

where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Id. (internal quotation marks omitted); see also Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 678-79 (1974). The guideposts that mark the dividing line are described in Matthews v. Eldrige:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976). The need for predeprivation process is not limited to real property, but extends to personal property as well. See, e.g., Fuentes, 407 U.S. at 70-71 (involving ordinary household items).

Consideration of the Matthews factors indicates that predeprivation process was called for under the circumstances, not only for real property, which is addressed in 17 M.R.S.A. § §§ 2851-2859, but also for personal property. As in Fuentes, a governmental disposition of an interest in household goods is deserving of due process protection. Where a private nuisance is at issue, as the defendants maintain was the case here, a measure of due process is afforded in Maine pursuant to 22 M.R.S. § 1561, which calls for notice from a local health officer, followed by a 24-hour opportunity to cure the private nuisance, but not for a hearing. Also potentially applicable is 17 M.R.S. § 2804, addressed to miscellaneous nuisances, which allows any person to commence a court process to abate the nuisance. Finally, 17 M.R.S. § 2859, which the Superior Court's judgment arose from, clearly affords due process regarding the removal of dangerous buildings. Maine law clearly affords predeprivation process for scenarios of the kind alleged by the Clarks.

### 2. *Postdeprivation process would suffice to resolve those alleged acts that exceeded the authority that arose from the predeprivation process or that was otherwise unauthorized.*

Attorney Evans asserts that "[w]hen an adequate post-deprivation remedy is available to a party under state law, deprivations of property do not violate the due process clause." (Evans's Mot. to Dismiss at 14, Doc. No. 21.) The Town embraces this contention and adds, importantly, that it is the random and unauthorized nature of the alleged conduct that makes post-deprivation remedies sufficient. (Palermo's Mot. to Dismiss at 4-5.) These arguments concern the Parratt-Hudson doctrine, which applies when deprivations of life, liberty or property arise from random and unauthorized conduct and the state affords a post-deprivation process that affords a meaningful opportunity for a remedy. Zinermon v. Burch, 494 U.S. 113, 115 (1990); Hudson v. Palmer, 468 U.S. 517, 531-33 (1984); Parratt v. Taylor, 451 U.S. 527, 541 (1981). In order to be fairly regarded as random and unauthorized, a deprivation must arise from "a situation where the State cannot predict and guard in advance against a deprivation." Zinermon, 494 U.S. at 115 (addressing the narrow question of the propriety of a Rule 12(b)(6) dismissal based on the rule stated in Parratt and Hudson). In this case, it is obvious that the Town could predict that a deprivation might arise from efforts to abate a nuisance; that was the whole purpose behind what appears to have been adequate predeprivation process. However, the Clarks complain precisely about deprivations that exceeded the scope of the Superior Court's judgment and were otherwise unauthorized by any legitimate nuisance abatement regime. By definition, such deprivations cannot be

8

authorized in advance, and it is that aspect of the claim that brings it squarely within the Parratt-Hudson random and unauthorized motif.

Thus, the Clarks allege that the defendants either purposefully exceeded their authority to abate a nuisance or negligently did so by removing personal property that did not contribute to the nuisance condition. If the deprivations arose from negligence, on the one hand, then they would not even trigger the protection of the Due Process Clause. See Daniels v. Williams, 474 U.S. 327, 328, 331 (1986) (disavowing certain language used by the Court in Parratt and holding that mere negligent acts leading to injury do not implicate the Due Process Clause, only injurious acts arising from "deliberate decisions of government officials"). If the deprivations arose from intentional misconduct, on the other hand, then they were precisely the kind of unauthorized deprivations that could not be justified by *any* predeprivation process and, therefore, fall squarely within the teaching of Zinermon, Daniels and Hudson. Because the acts that the Clarks complain of in their complaint are squarely alleged to be acts beyond the scope of any lawful authority (see compl. ¶¶ 9, 16, 21, 22, 43), they would appear of necessity to fall into the random and unauthorized category, making state law post-deprivation process the appropriate remedial option. Zinermon, 494 U.S. at 129 (discussing Parratt and observing that postdeprivation remedies were sufficient there because "any predeprivation procedural safeguards that the State did provide, or could have provided, would not address the risk of *this kind* of deprivation"). To paraphrase language in the Zinermon opinion, "[t]he very nature of a [theft or the intentional, malicious destruction of valuable property without any valid authority] made it impossible for the State to predict such deprivations and provide predeprivation process." Id. Under these circumstances, Maine law affords

9

an adequate remedy in a claim of conversion. See Zillman, Donald N., Maine Tort Law §
6.04 (1994) (discussing Maine law claim of conversion and collecting cases). That is the
sum and substance of the process that is due for unlawful deprivations of the sort alleged
here.

      The Clarks also complain of insufficient notice and the lack of an opportunity to
be heard in regard to the removal or destruction of personal property. (Pls.' Opposition
Mem. at 6.) The applicable statute calls for notice, see 22 M.R.S. § 1561 (affording
notice and a 24-hour opportunity to cure a private nuisance), and it is apparent that the
statute is meant to address public health hazards on an emergency basis. In
circumstances involving abatement of a public nuisance predeprivation process simply is
not required. See Yakus v. United States, 321 U.S. 414, 443 (1944) ("For the protection
of public health [the state] may order the summary destruction of property without prior
notice or hearing."); N. Am. Cold Storage Co. v. Chicago, 211 U.S. 306, 315-16 (1908)
(holding that "provision for a hearing before seizure and condemnation and destruction of
food which is unwholesome and unfit for use, is not necessary" and that the aggrieved
party "has the right to have [a hearing] afterward, which right may be claimed upon the
trial in an action brought for the destruction of his property, and in that action those who
destroyed it can only successfully defend if the jury shall find the fact of
unwholesomeness as claimed by them"). Of course, the Clarks are complaining that the
defendants were not really abating a nuisance but intentionally and maliciously
discarding or otherwise converting valuable property, which takes the defendants' alleged
conduct outside of the scope of 22 M.R.S. § 1561 and, by extension, renders it random
and unauthorized, there being no legitimate basis for the state to either anticipate or craft

any predeprivation process for deprivations that are inherently arbitrary. Thus, as a factual matter, there either was an emergency basis for the action or there was not. If an emergency existed, notice and *post*-deprivation process was more than sufficient. If an emergency did not exist, no process could legitimately authorize the defendants' conduct and the Parratt Hudson doctrine necessarily applies.[2]

Finally, there is the claim that the defendants unlawfully denied the Clarks access to their property for no justifiable reason. None of the parties has addressed this claim's connection to the Due Process Clause. Assuming for the sake of argument that it comes within the due process rubric, the nature of the allegation is that there was no lawful basis for such an exercise of police power, making it another random and unauthorized deprivation for which postdeprivation process in the form of a claim of false imprisonment would be the appropriate remedy (although possibly not against the defendants herein), see Holland v. Sebunya, 2000 ME 160, ¶ 19, 759 A.2d 205, 212 (holding that false imprisonment claim does not lie against one who merely calls police without justification, but not addressing a claim against such a person based on a conspiracy with the police or a supervisory or advisory role in the false imprisonment).

**B.    Intentional Infliction of Emotional Distress**

The Clarks essentially allege that the Town of Palermo engaged in a pogrom against them by intentionally and maliciously exceeding any lawful authority to deprive

---

[2]   If a misapplication of law deprived the Clarks of some process, they would still be limited to post-deprivation remedies.
> [First Circuit] cases establish that a government official has committed a random and unauthorized act when he or she misapplies state law to deny an individual the process due under a correct application of state law. In other words, conduct is "random and unauthorized" within the meaning of Parratt-Hudson when the challenged state action is a flaw in the official's conduct rather than a flaw in the state law itself.

Hadfield v. McDonough, 407 F.3d 11, 20 (1st Cir. 2005) (citations omitted) (affirming the dismissal of due process claim arising from the termination of a public employee without a hearing, where the right to a pretermination hearing was assumed to exist).

11

them of possession of both real and personal property. Although the standard for liability on this claim is exceedingly high, see Gomes v. Univ. of Me. Sys., 365 F. supp. 2d 6, 46-47 (D. Me. 2005), when viewed in the light most favorable to the Clarks, and without considering matters outside the pleadings, these allegations could support, in theory, an emotional distress claim. Thus, if the Court does not dismiss the due process claim, I would recommend denying this aspect of the motion to dismiss. In the event the due process claim is dismissed, however, this count, along with the other state law claims, should be remanded to state court. Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("The balance of competing factors ordinarily will weigh strongly in favor of declining jurisdiction over state law claims where the foundational federal claims have been dismissed at an early stage in the litigation.").

**C.**     **Immunity for Attorney Evans**

Attorney Evans argues that he is entitled to absolute immunity against the Clarks' claims because attorneys enjoy absolute immunity for statements made in order to advance the interest of their clients. (Evans's Mot. to Dismiss at 16, citing Creamer v. Danks, 863 F.2d 1037 (1st Cir. 1988), and Dineen v. Daughan, 381 A.2d 663 (Me. 1978).) The material allegations asserted against Attorney Evans are that, after obtaining the Superior Court's judgment, he wrongfully directed municipal agents to destroy and dispose of property beyond what was authorized by the prior proceedings and unlawfully directed law enforcement to prevent the Clarks from entering onto the property. (Compl. ¶¶ 16, 18, 22, 28.) These alleged actions do not fall within the absolute immunity extended to attorneys for their advocacy during the pendency of adjudicatory proceedings. See, e.g., Kalina v. Fletcher, 522 U.S. 118, 127 (1997) (indicating that

12

absolute immunity for attorneys is limited to their advocacy during the judicial process); Buckley v. Fitzsimmons, 509 U.S. 259, 268-69 (1993) (denying absolute immunity to attorney defendants in a § 1983 action for statements made to press); Burns v. Reed, 500 U.S. 478, 492-96 (1991) (denying absolute immunity to prosecutor for giving legal advice to police on the propriety of hypnotizing a suspect); Mitchell v. Forsyth, 472 U.S. 511, 519-20 (1985) (denying absolute immunity to Attorney General for investigative acts performed in cases involving national security); Butz v. Economou, 438 U.S. 478, 516-17 (1978) (extending absolute immunity to "an agency attorney" engaged in administrative proceedings); see also Dineen, 381 A.2d at 664-65 (recognizing immunity for statements made by an attorney in court pleadings).  Because the allegations concern post-litigation conduct by Attorney Evans, the imposition of liability would not threaten the judicial process and, therefore, absolute immunity is not called for.  If he gave instructions concerning the court's disposition that were erroneous, he should not be immunized where other municipal agents potentially would be exposed to liability for following his advice.  See, e.g., Guerro v. Mulhearn, 498 F.2d 1249, 1256 (1st Cir. 1974) (observing that it would be wrong to exempt a state attorney from liability for participation in unlawful investigatory acts that expose other law enforcement officers to liability).   Thus, in my view, this argument does not provide a basis for dismissal of any claims under either federal or state law.

## Conclusion

Based upon the foregoing , I recommend that the Court grant the defendants' motions (Doc. Nos. 21, 25), to the extent they both seek dismissal of Count III and I further recommend that the remaining state law claims be remanded to state court.

Docket number 16, the Town of Palermo's initial motion to dismiss, is rendered moot and should be terminated.

## NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within ten (10) days of being served with a copy thereof.  A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

December 28, 2007                                           /s/ Margaret J. Kravchuk
                                                                         U.S. Magistrate Judge